THE UNITED STATES DISTRICT COURT
FOR THE WESTRN DISTRICT OF
NORTH CAROLINA

| | |
|---|---|
| JOHN MIALL, ROBYN HITE, DAVID SHAW, DANIE JOHNSON and WILLA GRANT, ) ) ) ) | |
| *Plaintiffs,* ) ) ) | Civil Action Number: |
| v. ) ) | |
| CITY OF ASHEVILLE, ) DEBRA CAMPBELL, individually and in ) her official capacity as City Manager of ) the City of Asheville, and ESTHER ) MANHEIMER, individually and in her ) official capacity as Mayor of the City of ) Asheville, ) ) ) | |
| *Defendants.* ) ) | |

Plaintiffs bring this action to obtain, among other relief, a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §2201, that Defendants have and are employing illegal discriminatory policies and procedures on the basis race in creating and administering a city advisory board, The Human Relations Commission.  This discrimination is in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000(d) *et seq*. ("Title VI"), the Equal Protection Clause of the 14th Amendment to the United States Constitution, and 42 U.S.C. §1981 and 42 U.S.C. § 1983.

Defendants' policies and procedures have injured and continue to injure Plaintiffs by intentionally and improperly discriminating against them on the basis of their race and ethnicity.

JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. §§ 1981, 1983 and 2000(d) *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

2. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391 because the events giving rise to the claims detailed herein occurred in the Western District of North Carolina.

3. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. A declaration of law is necessary and appropriate to determine the parties' respective rights and duties.

4. Injunctive relief is authorized by 28 U.S.C. § 2202.

THE PARTIES

Plaintiffs

5. Plaintiff John Miall (hereinafter referred to as "Plaintiff Miall") is a citizen and resident of Buncombe County, North Carolina and resides within the city limits of Asheville, North Carolina.

6. Plaintiff Robyn Hite (hereinafter referred to as "Plaintiff Hite") is a citizen and resident of Buncombe County, North Carolina and resides outside the city limits of Asheville, North Carolina.

7. Plaintiff David Shaw (hereinafter referred to as "Plaintiff Shaw") is a citizen and resident of Buncombe County, North Carolina and resides within the city limits of Asheville, North Carolina.

8. Plaintiff Willa Grant (hereinafter referred to as "Plaintiff Grant") is a citizen and resident of Buncombe County, North Carolina and resides within the city limits of Asheville, North Carolina.

9. Plaintiff Danie Johnson (hereinafter referred to as "Plaintiff Johnson") is a citizen and resident of Buncombe County, North Carolina and resides within the city limits of Asheville, North Carolina.

10. Plaintiffs are Caucasian and have exhibited a desire to serve on the Defendant City of Asheville's volunteer advisory board, The Human Relations Commission.

<u>Defendants</u>

11. Defendant City of Asheville (hereinafter referred to as "Defendant Asheville") is a North Carolina municipal corporation organized and existing under the laws of the State of North Carolina. Defendant Asheville is a recipient of federal funds.

12. Defendant Debra Campbell (hereinafter referred to as "Defendant Campbell") is the City Manager of the City of Asheville. As City Manager, Defendant Campbell oversees day-to-day city operations and executes Council-established laws and policies. The city manager is also responsible for ensuring that the city's operations and policies conform to state and federal anti-discrimination laws. Defendant Campbell is being sued in her individual and official capacities.

13. Defendant Esther Manheimer (hereinafter referred to as "Defendant Manheimer") is the Mayor of the City of Asheville. As City Mayor, Defendant Manheimer presides over City Council meetings and serves as the head of city government. Defendant Manheimer is responsible for forming the objectives and policies of city government. Defendant Manheimer is also responsible for ensuring that the city's policies and procedures conform to state and federal anti-discrimination laws. Defendant Manheimer is sued in her individual and official capacities.

FACTUAL ALLEGATIONS

14. Paragraphs 1 to 13 are incorporated by reference.

15. Defendant City has created numerous boards and commissions to influence policy within Defendant City's governance. These boards and commission provide citizens with "a voice in the City's growth and future" and allow citizens to "be part of the body that is responsible for making decisions regarding policy, service, and education". Defendant City states that "the rewards can be gratifying  members meet other residents with similar interests, they learn about the city, and they help shape the future of Asheville". (See attached Exhibit 1).

16. In 2018, Defendant Asheville created the Human Relations Commission of Asheville (hereinafter referred to as "HRCA"). The HRCA is a volunteer advisory board whose purpose is to "promote and improve human relations and achieve equity among all citizens in the city by carrying out the city's human relations program." (See attached Exhibit. 2)

17. The duties of the HRCA include:

    a. making policy recommendations to Defendant City's governing Council which promote and improve human relations and advance equity in the city;

    b. providing forums for residents to raise issues and complaints relating to human relations in the city;

    c. engaging the community and gathering community input regarding city funded programs;

    d. promoting and improving relations in public safety;

    e. promoting human relations in education;

    f. promoting human relations in economic development including city-funded projects;

    g. promoting human relations in health and human services including city-funded projects; and

    i. promoting human relations in housing.

 18. Defendant Asheville appointed nine (9) individuals to the HRCA, with its first meeting occurring in 2019.

 19. In 2019, the HRCA met and developed rules of procedure for the HRCA. (See attached Exhibit 3). These procedural rules increased membership of the HRCA from nine (9) to fifteen (15) members. The procedural rules further specified the criteria for membership on the HRCA including that the HRCA membership consist of:

 a. 6 African Americans

 b. 2 Latinx individuals

 c. 2 members of the LGBTQ community

 d. 2 youth members between the ages of 18 and 25

 e. 2 to 3 individuals who live in public housing

 f. 2 individuals with a disability; and

 g. 3 individuals who are recognized as community leaders.

 20. Defendants use the term "LGBTQ" as an acronym for persons who are lesbian, gay, bisexual, transsexual, or queer.

 21. At all relevant times, Defendants carried out the administration of the HRCA adhering as closely as possible, if not completely in compliance, with these procedures.

 22. On June 16, 2022, in an open meeting of the HRCA, Defendant City's attorney, Ms. Aairn Miles, met with the HRCA and requested that it amend its procedural rules regarding its membership requirements. Ms. Miles specifically requested that the HRCA remove the racial qualifications for membership on the HRCAMs. Miles explained that having specific required numbers of members from a particular race "could be identified as a quota which are not

permitted under federal law or state law to be included when dealing with race... so it's for the removal of the quota language". The HRCA considered and then tabled the proposal. Chairperson Tanya Rodriguez explaining the concern that "our color isn't diluted out of the Commission". The HRCA did not revisit this proposal.

23. Defendants published on Defendant City's official website a description of the HRCA. This publication was last updated or reviewed on January 17, 2023. In this publication, Defendants recite the qualifications for service upon the HRCA. (See attached Exhibit 4). "City Council will endeavor to appoint city residents (with up to three members residing withing Buncombe County) meeting the following criteria:

- Black or African Americans
- Latino/a or Hispanic individuals
- Native Americans
- Asian Americans
- Members of the LGBTQ+ community
- Youth members, between the ages of 18 and 25
- Individuals who live in public housing
- Individuals with a disability or disabled individuals
- Individuals who are recognized as community leaders"

24. Defendants created a general application for applicants to use in applying for various board and commission vacancies. However, Defendants required applicants for the HRCA to complete a second application, specific to the HRCA, which it named the "Human Relations Commission Form". (See attached Exhibit 5). This form required applicants to identify the criteria listed in Paragraph #23 above which the applicant met. Defendants state that the Human

Relations Commission Form must be completed by applicants for consideration for appointment to the HRCA.

25. In February 2023, at least four (4) positions became open on the HRCA. Defendants advertised that there were vacancies on the HRCA to the general public on both Defendant City's website and through an email campaign.

26. Plaintiffs applied for positions on the HRCA by filling out and submitting Defendants' applications.

27. Plaintiffs did not meet Defendants' racial criteria nor the other criteria of being disabled, living in public housing, between the ages of 25 and 18, a member of the LGBTQ community, nor were Plaintiffs "recognized community leaders" as Defendants considered that term.

28. On June 13, 2023, Defendants, by and through the actions of the Asheville City Council, rejected Plaintiffs' applications.

29. At no time prior to rejecting Plaintiffs' applications did Defendants communicate with Plaintiffs regarding their interest in the HRCA; nor did they seek any further information from the Plaintiffs regarding their qualifications to serve on the HRCA.

30. Rather than appoint Plaintiffs to the HRCA, Defendants elected to leave the open positions vacant and re-advertise the openings in the hopes of obtaining applicants who met Defendants' criteria.

31. At all relevant times, Defendants excluded white persons from serving on the HRCA unless they could qualify under with additional criteria listed on Exhibit 3. In effect, white applicants must demonstrate a "plus factor" (age, homosexual/ transgender, disability status, public housing resident, or community leader) before being qualified for service.

32. Plaintiffs would have served on the HRCA had they not been disqualified by Defendants based on their race.

33. Defendants conspired with each other to organize and administer the HRCA in a way that was discriminatory on the basis of race and ethnicity.

34. Defendants intend to continue discriminating against applicants to the HRCA on the basis of race and ethnicity. As of the date of this filing, Defendants are re-advertising the vacancies on the HRCA with the exact same wording in its applications requiring applicants to articulate their qualifications for the HRCA based on race.

35. At all relevant times, Defendants were, and continue to be, aware that its organization and administration of the HRCA which discriminated and will continue to discriminate against applicants on the basis of race and ethnicity was and continues to be a violation of the Equal Protection clause of the 14th Amendment to the U.S. Constitution and also a violation of Title VI of the 1964 Civil Rights Act (42 U.S.C. § 2000d et seq).

36. Defendants' discriminatory policies and practices have deprived Plaintiffs of the ability to participate and engage in the political and civic process and other advantages offered by serving on the HRCA in the same manner as other persons who are non-white on the basis of their race and ethnicity.

37. Plaintiffs have suffered concrete and irreparable injury as a result of Defendants' discriminatory and unlawful conduct.

38. Defendants' discriminatory policies and practices will deprive Plaintiffs, and similarly situated persons, of the ability to participate and engage in the political and civic process and other advantages offered by serving on the HRCA in the same manner as other persons who are non-white.

39. Plaintiffs will continue to suffer concrete and irreparable injury as a result of Defendants' illegal conduct.

40. The Defendants' discriminatory policies and practices have harmed and threaten to continue to harm the interests and dignity of Plaintiffs.

41. The Defendants' discriminatory policies and practices are in violation of well-established federal anti-discrimination laws, including the Fourteenth Amendment to the U.S. Constitution and Title VI of the 1964 Civil Rights Act. No reasonable actor in the position of Defendants would conclude that Defendants' aforementioned acts were legal.

42. The Defendants engaged in the aforementioned discriminatory practices with malice and/ or with reckless indifference to the federal protected rights of the Plaintiffs.

CLAIMS FOR RELIEF

I. <u>Violation of Equal Protection Clause of the 14th Amendment to the U.S. Constitution on the Basis of Race</u>

43. Paragraphs 1 to 42 are incorporated herein by reference.

44. Defendant City is obligated to comply with the United States Constitution at all times.

45. Defendants Manheimer and Campbell, as officers, agents and employees of Defendant City, are obligated to comply with the United States Constitution in all matters undertaken while acting in the course and scope of their employment/ agency/ office with Defendant City. In fact, Defendant Manheimer has sworn an oath when taking office to "support and maintain the Constitution and laws of the United States". (N.C. Gen. Stat. §160A-68)

46. Defendants have promulgated, implemented, ratified, and enforced policies that have deprived Plaintiffs of their right to equal protection under the law on the basis of race.

47. By promulgating policies which exclude applicants, including Plaintiffs, from participating on city advisory boards based on Plaintiffs' race; Defendants intentionally and without adequate justification classified Plaintiffs on the basis of their race and thereby discriminated against them on the basis of race in violation of Plaintiffs' right to equal protection of the laws secured by the Fourteenth Amendment to the U.S. Constitution.

48. At all relevant times, Defendants have acted and will continue to act under color of law.

49. Defendants have no compelling government interest which would justify their actions in discriminating against Plaintiffs on the basis of race. Even if they had such compelling government interest, their method of excluding white persons from the HRCA unless they could establish a "plus factor" is not narrowly tailored to meet said interest.

50. Plaintiffs have been and will continue to be injured because Defendants will continue to deny them the opportunity to participate on advisory boards, including the HRCA, on equal footing with other applicants on the basis of race due to their intentionally discriminatory policies and procedures.

51. Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 and a permanent injunction pursuant to 28 U.S.C. § 2202 because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to discriminate on the basis of race in violation of the Fourteenth Amendment and because the harm Plaintiffs will otherwise continue to suffer is irreparable.

52. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

II. <u>Violation of Title VI, 42 U.S.C. § 2000(d)</u>

53. Paragraphs 1 to 52 are incorporated herein by reference.

54. Title VI of the 1964 Civil Rights Act (42 U.S.C. §2000(d)) provides in relevant part: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

55. By promulgating a policy and program which discriminates against citizens who seek to serve on city advisory boards and commission on the basis of race, Defendants are in violation of Title VI, 42 U.S.C. § 2000(d) *et seq.*

56. Defendants' actions were made under color of law.

57. Plaintiffs are entitled to declaratory judgment pursuant to 28 U.S.C. §2201 and a permanent injunction pursuant to 28 U.S.C. § 2202 because there is no plain, adequate or speedy remedy at law to prevent Defendants from continuing to discriminate on the basis of race or ethnicity in violation of Title VI and because the harm Plaintiffs will otherwise continue to suffer is irreparable.

58. Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

REQUESTS FOR RELIEF

Wherefore, Plaintiffs respectfully request of this Court the following relief:

1. A declaratory judgement, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, from the Court that Defendants' practices and procedures of treating white applicants in a less favorable manner than other applicants based on their race and/or ethnicity violates the Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights

Act of 1964, 42 U.S.C. § 2000(d) *et seq.*, and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983;

2. A permanent injunction prohibiting Defendants from using race as a factor in considering applicant qualifications for city advisory boards and commissions;

3. A permanent injunction requiring Defendants to conduct their selection process to advisory boards and commissions in a manner that does not permit those engaged in the decisional process to be aware or learn the race or ethnicity of any applicant for any advisory board or commission;

4. Nominal damages;

5. Punitive damages;

6. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable legal authority;

7. All other relief this Court finds appropriate and just.

This the 5th day of September, 2023.

/s/ Ruth C. Smith
NC Bar # 26754
79 Woodfin Place, Suite 103
Asheville, NC 28801
(828) 367-7998 (ph.)
(828) 367-7991 (fax)
ruth@mywncattorney.com