IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:23-cv-00259-MR-WCM

| | |
|---|---|
| JOHN P. MIALL, ROBYN HITE, DAVID SHAW, DANIE JOHNSON, and WILLA GRANT, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF ASHEVILLE, DEBRA CAMPBELL, and ESTHER MANHEIMER, <br><br> Defendants. | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiffs' Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure [Doc. 13].

**I.    PROCEDURAL BACKGROUND**

Plaintiffs John P. Miall, Robyn Hite, David Shaw, Danie Johnson, and Willa Grant (collectively, "the Plaintiffs") initiated this action on September 5, 2023, seeking, among other relief, a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Defendants City of Asheville, Debra Campbell, individually and in her official capacity as City Manager of the City of Asheville, and Esther Manheimer, individually and in

her official capacity as Mayor of the City of Asheville, (collectively, "the Defendants") have and are employing illegal discriminatory policies and procedures on the basis of race in creating and administering a city advisory board, the Human Relations Commission ("HRCA"). The Plaintiffs, who are white City of Asheville residents, claim that the race-based appointment preferences utilized by the Defendants disadvantage applicants who are not racial minorities, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq., and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §§ 1981 and 1983. [Doc. 1].

On September 26, 2023, the Plaintiffs filed an Amended Complaint, asserting a putative class action and seeking additional injunctive relief. [Doc. 5]. On September 27, 2023, the Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, seeking to enjoin the Defendants from (1) appointing members to the HRCA using race-based appointment preferences and (2) otherwise discriminating on the basis of race in making appointments to the HRCA. [Doc. 7]. On September 29, 2023, this Court denied the Plaintiffs' request for a temporary restraining order and denied without prejudice their request for a preliminary injunction. [Doc. 11].

On October 6, 2023, the Plaintiffs filed the present Motion for Class Certification. [Doc. 13]. On October 20, 2023, the Defendants filed a Response in Opposition to Plaintiffs' Motion. [Doc. 16]. On October 27, 2023, the Plaintiffs filed a Reply to the Defendants' Response. [Doc. 17].

Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). To justify a departure from that usual rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 348-49 (quoting East Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). Thus, in seeking the certification of a class action, a putative class representative must demonstrate as a threshold matter that she is a member of the proposed class and that the other class members are "readily identifiable" or "ascertainable." EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.").

Once this threshold determination has been made, the Court must then determine whether the readily identifiable class should be certified. Rule 23(a) of the Federal Rules of Civil Procedure sets forth the four prerequisites that an action must satisfy in order to be certified as a class action: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims and defenses of the class as a whole ("typicality"); and (4) the representative party must fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (citations and internal quotation marks omitted).

The party seeking class certification bears the burden of demonstrating compliance with Rule 23. However, in addition to pleading compliance with the Rule 23 requirements, the party seeking certification must present evidence that the putative class complies with Rule 23. Adair, 764 F.3d at

357 (internal citations omitted). While the plaintiff bears the burden of demonstrating compliance with Rule 23, the Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." Id. at 358 (quoting Dukes, 564 U.S. at 350-51). To satisfy this obligation, the Court may "probe behind the pleadings before coming to rest on the certification question." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (citation and internal quotation marks omitted). Ultimately, the decision to certify a class action is within the discretion of the Court. Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 424 (4th Cir. 2003).

## III. FACTUAL BACKGROUND

The Plaintiffs are white residents of Asheville, North Carolina, who "have exhibited a desire to serve" on the Defendant City's volunteer advisory board, the HRCA. [Doc. 1 at ¶¶ 5-10]. In 2018, the Defendants created the HRCA to "promote and improve human relations and achieve equity among all citizens in the city by carrying out the city's human relations program." [Id. at ¶ 16]. The HRCA held its first meeting in 2019 and developed its rules of procedure. [Id. at ¶ 19]. Alongside developing these procedural rules, the HRCA increased membership from nine members, as proscribed by the city ordinance establishing the HRCA, to fifteen members, and further specified

the criteria for membership on the HRCA. [Docs. 1-2, 1-3]. The city ordinance stated that the HRCA "should endeavor to use the following criteria" for membership:

> Members should have demonstrated an interest and experience in human relations. . . . Membership should reflect the groups of individuals that the human relations program is intended to assist and protect, including but not limited to individuals from different races, ethnicities, sexual orientation and socioeconomic backgrounds. Commission representation shall take into consideration the diverse nature of the Asheville community. Membership on the Commission shall include, but not be limited to, the following: Black or African Americans; Latino/a or Hispanic individuals; Native Americans and Indigenous People; Asian Americans; members of the LGBTQ+ community; Youth members between the ages of 18 and 25; Individuals who live in public housing; Individuals with a disability or disabled individuals; Individuals who are recognized as community leaders. . . . Council shall appoint members who reside in the various geographical areas of the city to include: north Asheville, south Asheville, west Asheville, east Asheville and the downtown area.

[Doc. 1-2 at 2]. The procedural rules adopted by the HRCA itself further specify that the HRCA membership "shall" consist of: six African Americans, two Latinx individuals, two members of the LGBTQ community, two youth members between the ages of 18 and 25, two to three individuals who live in public housing, two individuals with a disability, three individuals who are recognized as community leaders, and at least one member from each of the

6

following: north Asheville, south Asheville, west Asheville, east Asheville, and the downtown area. [Doc. 1-3 at 1]. Such criteria were published on the Defendant City's official website. [Doc. 1 at ¶ 23]., In applying for HRCA membership, applicants were required to identify whether they met these criteria. [Id. at ¶¶ 23-24].

On September 13, 2022, the HRCA amended its policies "in order to delete any minimum standards for diversity" or racial quotas. [Doc. 4-1 at 2]. The language in the city ordinance was also amended to state that "consideration of appointment of members shall provide equal access and opportunity to serve upon the Commission to all historically disadvantaged groups, including but not limited to the following," and then lists the same demographic categories. [Id.]; Asheville Code Ord. § 2-185.25. As of January 17, 2023, the Defendant City's website has been updated to reflect the criteria as written in the city ordinance, without specific number quotas for each category. [Doc. 1-4 at 1]. The website also provides that in addition to city residents, up to three members may be appointed who reside within Buncombe County. [Id.].

In February 2023, at least four positions became open on the HRCA, and the Defendants advertised that there were vacancies on the HRCA to the public on both Defendant City's website and through an email campaign.

[Doc. 1 at ¶ 25]. The Plaintiffs applied for positions on the HRCA by filling out and submitting applications; while the Plaintiffs' applications indicated that they were residents of Asheville, they also indicated that the Plaintiffs did not meet any of the racial or other demographic criteria listed on the website. [Id. at ¶¶ 26-27]. On June 13, 2023, the Defendants rejected the Plaintiffs' applications, but the open positions remained vacant and were re-advertised to the public. [Id. at ¶¶ 28, 30]. The Plaintiffs allege that they would have served on the HRCA had they not been disqualified based on their race. [Id. at ¶ 32].

The Plaintiffs now move for class certification, based on the proposed class of "past, present, future, and deterred nonminority Asheville or Buncombe County applicants to the Human Relations Commission of Asheville (HRCA) that—but for their race—are qualified to apply and compete for an appointment to the HRCA on equal footing." [Doc. 14 at 1]. The Plaintiffs propose this class under the theory that the number of applications received for the HRCA from known nonminority applicants[1] does

---

[1] The Plaintiffs contend this number to be 46 and cite Counsel Andrew Quinio's Declaration and the exhibits attached thereto as evidence supporting this number. [Doc. 14 at 2]. Of these 46, the Plaintiffs allege, "about 30" were not appointed. [Id.]. However, this Court has reviewed said exhibits and cannot determine how the Plaintiffs came to either the 46 or 30 figure. From the records provided, it appears only 38 nonminority applicants ever applied for HRCA membership, and of those, 29 were denied. Furthermore, the records show that as of June 2023, only 11 nonminority applicants have

not account for all the would-be applicants who would have applied for the HRCA had the Defendant City not advertised its race-based preferences. [Id. at 2-3]. They further contend that, because 77.5% of Asheville residents are white and non-Hispanic, it would be "impracticable" to contact all these residents to inquire if they would have applied for the HRCA but for the challenged policy. [Id. at 3].

## IV. DISCUSSION

Rule 23 requires, as a threshold matter, that the members of a proposed class be "readily identifiable." Adair, 764 F.3d at 358. "The plaintiffs need not be able to identify every class member at the time of certification. But '[i]f class members are impossible to identify without extensive and individualized fact-finding or "mini-trials," then a class action is inappropriate.'" Id. (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir.2012)).

As an initial matter, the Plaintiffs contend that the class can be certified based on the alleged 46 applications from nonminority applicants that were subjected to the race-based preferences, of which the Plaintiffs allege 30 were not appointed. [Doc. 14 at 1]. These 46 applicants, the Plaintiffs argue,

submitted applications since the racial quotas were eliminated in September 2022, and of those, at least two have already been appointed.

put the estimated number of class members "well above 40." [Id.]. However, the Plaintiffs have not presented any evidence indicating why the 30 of those 46 alleged applicants were rejected from membership on the HRCA. Given that the criteria included experience or interest in human relations and residence in Asheville or Buncombe County in addition to the demographic criteria, it is not clear whether these 30 applicants were rejected solely on the basis of their race. Therefore, the Plaintiffs assertion that they would all qualify for class membership is merely conjecture.

It is also unclear as to how all of these applicants would have standing to challenge the Defendants' actions given that the HRCA ordinance and policy have been amended since many of these applicants applied. A plaintiff does not have standing to challenge a statute that was never applied to him. Davis v. Scherer, 468 U.S. 183, 189 n.7 (1984) ("As the current state statute was never applied to [the plaintiff], he lacks standing to question its constitutionality."). This action was filed on September 5, 2023, almost a year after the HRCA membership policies were amended to remove the demographic quotas. Therefore, to the extent the Plaintiffs are challenging the constitutionality of the HRCA policy on its face, the only appropriate class members would be those who have applied since the policy was amended.

10
Case 1:23-cv-00259-MR-WCM   Document 25   Filed 01/16/24   Page 10 of 15

Considering the particular circumstances of this case, the Plaintiffs' assertion that their estimated class membership is "well above 40" is insufficient for class certification.

> Though no specified number is needed to maintain a class action, as a general guideline, a class that encompasses fewer than 20 members will likely not be certified while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone. For the "gray area" cases between twenty and forty members, all the circumstances of the case should be taken into consideration in evaluating the impracticability of joinder.

In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th 227, 234 (4th Cir. 2021) (alterations and citations omitted).

Here, the Plaintiffs have not adequately shown that even the 30 alleged applicants denied appointment belong in their class; the records provided by the Plaintiffs themselves instead indicate that only 11 applicants in total have applied for membership under the revised policy, at least two of whom have already been appointed for membership.[2] [Doc. 15-1 at 69-71]. Of the nine applicants remaining, four are already Plaintiffs in this matter. [Id.]. That

---

[2] The Defendants argue that only twelve nonminority applicants have sought appointment to the HRCA since the operative selection criteria have been in effect. [Doc. 16-1 at ¶ 5]. Of those twelve, six were in fact appointed to the HRCA, and of the remaining six, four are Plaintiffs in the present matter. [Doc. 16 at 6]. In support of this argument, the Defendants have attached an Affidavit of Magdalen S. Burleson, Asheville City Clerk, stating the same, but because this affidavit is not signed, this Court cannot consider it. [Doc. 1-6].

11

Case 1:23-cv-00259-MR-WCM    Document 25    Filed 01/16/24    Page 11 of 15

would leave only five potential additional class members not yet joined. Surely, joinder of these members does not require class certification, nor does this Court find that a class of, at the most, only nine members can meet the requirements of Rule 23.

In an effort to broaden their class membership, the Plaintiffs further argue that the proposed class includes not only any nonminority person who has applied for membership on the HRCA and was rejected, but all *potential* applicants within Buncombe County who *might* have been chilled from applying for membership because of the publicized demographic preferences. [Doc. 14 at 2-3]. The Plaintiffs, however, have not presented any evidence that such a class exists. A plaintiff seeking class certification must, at a minimum, produce some type of evidence suggesting that a class exists. See Doe v. Charleston Area Medical Ctr.*,* 529 F.2d 638, 645 (4th Cir.1975) (holding that an informal survey indicating that seventy women sought abortions outside West Virginia is sufficient proof of class's existence). While speculative representations as to the size of the class can be sufficient, simply concluding that additional white residents in the county might have considered applying for the HRCA is not. See id.

Rather than presenting any evidence of their proposed class, the Plaintiffs rely on several nonbinding cases to support their position. Aside

from the fact that this Court is not bound by these cases, they both present key factual differences. In Christman v. American Cyanamid, a case from the Northern District of West Virginia, the court certified the proposed class of

> [a]ll past and present women applicants who claim they were denied employment in the production and maintenance work force at [the defendant's] Plant . . . on account of their sex[, p]rovided the class will also include all women who claim they were deterred from applying for production and maintenance positions . . . on account of the Defendant's alleged reputation in the community for discriminating against women applicants.

92 F.R.D. 441, 450 (N.D.W. Va. 1981). In that case, the plaintiffs presented evidence that 273 women had submitted applications to the defendant employer, and that the employer indeed had a reputation for discrimination. Id. at 451. Here, the Plaintiffs have presented *no* evidence of additional applicants who are claiming that they were deterred from applying, nor have they shown the Defendants had such a reputation for discrimination that would have created a significant deterrent effect.

The Plaintiffs also rely on a Fifth Circuit case, Phillips v. Joint Legislative Committee, where the district court certified a class of "actual black applicants but refused to include future applicants and deterred persons, citing problems of numerosity." 637 F.2d 1014, 1021 (5th Cir.

13

1981).  The Fifth Circuit court modified the class certification to include the future and deterred applicants.  [Id.].  However, in that case, "neither party [could] even count how many black applicants there were, let alone identify all of them."  Id.  That is not the case here.  Both parties have alleged an ascertainable number of nonminority applicants, and the Plaintiffs have not presented any evidence that any significant number of deterred nonapplicants exists.

The Fourth Circuit has made clear that "[a] class cannot be certified unless a court can readily identify the class members in reference to *objective* criteria."  Adair, 764 F.3d at 358 (emphasis added).  Under the Plaintiffs' proposed criteria, it would be impossible for this Court to determine how many city residents were actually deterred from applying or were even otherwise qualified to apply.  Doing so would certainly require "extensive and individualized fact-finding."  Id.

In essence, the Plaintiffs argue that the demographic criteria required for applicants to the HRCA has an adverse impact on potentially all nonminority residents of Asheville.  However, the "'mere existence' of a *potential* harm is not enough to justify class certification; actual injury to each class member must be shown."  Simmons v. Poe, 47 F.3d 1370 (4th Cir. 1995).  The Plaintiffs have made no such showing.

Because the Plaintiffs have failed to demonstrate that their proposed class is sufficiently numerous or readily identifiable,[3] the Plaintiffs' Motion for Class Certification must be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion for Class Certification [Doc. 13] is **DENIED**.

**IT IS SO ORDERED.**

Signed: January 15, 2024

Martin Reidinger
Chief United States District Judge

---

[3] While it appears that the Plaintiffs have adequately alleged the other three requirements for class certification—commonality, typicality, and adequacy of representation—the Court need not reach individual analyses for each given the clear failure of the first.