IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00259-MR-WCM

| | | |
|---|---|---|
| JOHN P. MIALL, JR.; <br> ROBYN HITE; <br> DAVID SHAW; <br> DANIE JOHNSON; and <br> WILLA GRANT, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ASHEVILLE; <br> DEBRA CAMPBELL <br> *in her official capacity as City* <br> *Manager of the City of Asheville*; and <br> ESTHER MANHEIMER <br> *in her official capacity as* <br> *Mayor of the City of Asheville*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 18), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Procedural Background

On September 5, 2023, John P. Miall, Jr., Robyn Hite, David Shaw, Danie Johnson, and Willa Grant (collectively, "Plaintiffs") filed their Original Complaint. Doc. 1.

Plaintiffs filed an Amended Complaint on September 26, 2023, naming

1

the City of Asheville (the "City"), Debra Campbell in her official capacity as the City Manager of Asheville, and Esther Manheimer in her official capacity as the Mayor of Asheville (collectively, "Defendants") as defendants. Doc. 5 at ¶¶ 11–13.

On September 27, 2023, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. Doc. 7. It was denied on September 28, 2023. Doc. 11.

On October 6, 2023, Plaintiffs filed a Motion for Class Certification (Doc. 13).

On November 6, 2023, Defendants filed the instant Motion to Dismiss. Doc. 18. Plaintiffs have responded, and Defendants have replied. Docs. 19, 23.

On January 15, 2024, Plaintiffs' Motion for Class Certification was denied. Doc. 25.

## II. Materials Considered

Plaintiffs have attached the following to their Amended Complaint: various spreadsheets purporting to show the demographics of the Human Relations Commission of Asheville (the "Commission," Doc. 5-1); a copy of a webpage, last updated January 17, 2023, describing the Commission (Doc. 5-2); a copy of a Commission application form (Doc. 5-3); and a copy of a vacancy announcement that includes notice of Commission vacancies (Doc. 5-4).

In support of their Motion to Dismiss, Defendants have submitted an

2

affidavit signed by Magdalen S. Burleson, Clerk for the City of Asheville, on November 6, 2023 (Doc. 18-1) which incorporates by reference Ms. Burleson's September 7, 2023 affidavit (Doc. 4-1). Through these affidavits, Ms. Burleson attests to the various versions of Section 2-185.25 of the Asheville Code of Ordinances which, among other things, sets forth membership guidelines for the Commission.

These materials may be considered for purposes of the Motion to Dismiss. See Sec'y of State for Defence v. Trimble Navigation, Ltd., 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

III.   Plaintiffs' Allegations and the Subject Ordinance

On April 10, 2018, the Asheville City Council passed Section 2-185.25 (the "2018 Ordinance"), which created the Commission. Doc. 5 at ¶ 18. The 2018 Ordinance stated that the Commission would be comprised of 15 members, and that:

> the [City] Council should endeavor to appoint individuals meeting the following criteria:
>
> • 6 African Americans;
> • 2 Latinx individuals;
> • 2 members of the LGBTQ+ community;
> • 2 Youth members between the ages of 18 and 25;
> • 2 to 3 individuals who live in public housing;
> • 2 individuals with a disability;

3

- 3 individuals who are recognized as community leaders.

Id. at ¶ 19.

On September 13, 2022, the City Council amended the 2018 Ordinance "to remove the numerical quotas". Id. at ¶ 22. The revised ordinance (the "2022 Ordinance") directed the City Council to "endeavor to use the following criteria" when considering appointments to the Commission:

b.    Membership should reflect the groups of individuals that the human relations program is intended to assist and protect, including but not limited to individuals from different races, ethnicities, sexual orientation and socioeconomic backgrounds. Commission representation shall take into consideration the diverse nature of the Asheville community. Membership on the Commission shall include, but not be limited to, the following:

- o Black or African Americans;
- o Latino/a or Hispanic individuals;
- o Native Americans and Indigenous People;
- o Asian Americans;
- o members of the LGBTQ+ community;
- o Youth members between the ages of 18 and 25;
- o Individuals who live in public housing;
- o Individuals with a disability or disabled individuals;
- o Individuals who are recognized as community leaders.

Id.; see also Doc. 4-1.

On January 10, 2023, the City Council reduced the number of Commission members from 15 to 9. Id. at ¶ 24.

4

In March and April of 2023, Plaintiffs, who are white, submitted applications for appointment to the Commission. Id. at ¶¶ 29–33.

On June 13, 2023, two other applicants–Candance Blanchard and Susan Ann Sacco–were appointed to the Commission. Id. at ¶¶ 34–35. Ms. Blanchard and Ms. Sacco are white. Doc. 5-1 at 3. However, appointments were not made for four other seats, and those vacancies were readvertised.

As noted, on September 5, 2023, Plaintiffs initiated this action. Doc. 1.

On October 10, 2023, the 2022 Ordinance was amended (the "2023 Ordinance," Doc. 18-1). The 2023 Ordinance provides that the "consideration of appointment of members" to the Commission:

> Shall provide equal access and opportunity to serve upon the Commission to all historically disadvantaged groups, including but not limited to the following:
>
> o  Black or African Americans;
> o  Latino/a or Hispanic individuals;
> o  Native Americans and Indigenous People;
> o  Asian Americans;
> o  members of the LGBTQ+ community;
> o  Youth members between the ages of 18 and 25;
> o  Individuals who live in public housing;
> o  Individuals with a disability or disabled individuals;
> o  Individuals who are recognized as community leaders.
>
> Doc. 18-1 at 3–4.

In October of 2023, Miall was appointed to the Commission. Doc. 18-1; see also Doc. 19 at 5, n.1.

5

Plaintiffs request a declaration that the City's practice of appointing members of the Commission is unconstitutional. Doc. 5. Plaintiffs also seek a permanent injunction prohibiting Defendants from enforcing Section 2-185.25 and "any other policy, practice, or procedure in existence or being proposed that provides appointment preferences to minority applicants to the [Commission], and from otherwise discriminating on the basis of race in making appointments to the [Commission]." Id. at 14. Finally, Plaintiffs request an award of attorneys' fees, costs, and nominal damages. Id.

## IV. Discussion

### A. Rule 12(b)(1)

#### 1. Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the question of whether the court has subject matter jurisdiction to hear a dispute. "'Federal courts have no power to hear moot cases,' and the proper disposition of moot claims is to dismiss them for lack of jurisdiction." Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty., 105 F.4th 554, 564 (4th Cir. 2024) (quoting Brooks v. Vassar, 462 F.3d 341, 348 (4th Cir. 2006)). Similarly, "ripeness is a question of subject matter jurisdiction," South Carolina v. United States, 912 F.3d 720, 730 (4th Cir. 2019) (citing Sansotta v. Town of Nags Head, 724 F.3d 533, 548 (4th Cir. 2013), and therefore "where a claim is not ripe, it must be dismissed pursuant to Rule 12(b)(1)." Zayo Grp.,

6

LLC v. Mayor & City Council of Balt., No. JFM–16–592, 2016 WL 3448261, at
*10 (D. Md. June 14, 2016).

"[D]ismissal for lack of subject matter jurisdiction should normally be
without prejudice, since by definition the court lacks power to reach the merits
of the case." Beckworth v. Bizier, No. 3:12-CV-00512-MOC-DSC, 2013 WL
310065, at *1, n.1 (W.D.N.C. Jan. 25, 2013).

### 2. Mootness

"[T]he doctrine of mootness constitutes a part of the constitutional limits
of federal court jurisdiction.... [A] case is moot when the issues presented are
no longer 'live' or the parties lack a legally cognizable interest in the outcome."
United States v. Hardy, 545 F.3d 280, 283 (4th Cir.2008) (quotations and
citations omitted). "Particularly relevant here, '[m]ootness has been described
as 'the doctrine of standing set in a time frame: The requisite personal interest
that must exist at the commencement of the litigation (standing) must
continue throughout its existence (mootness).'"" Townes v. Jarvis, 577 F.3d 543,
546–47 (4th Cir. 2009) (quoting Arizonans for Official English v. Arizona, 520
U.S. 43, 68 n. 22 (1997) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S.
388, 397 (1980)).[1]

---

[1] Defendants assert that Plaintiffs lack standing to challenge the 2018 Ordinance
because it was not in effect at the time Plaintiffs applied for appointment to the
Commission. Doc. 18 at 4. It does not appear, though, that Plaintiffs are challenging
application of the 2018 Ordinance to them.

With respect to the 2022 Ordinance–which was in effect at the time of Plaintiffs' applications–Defendants argue that Plaintiffs' claims have been mooted by the passage of the 2023 Ordinance. Further, Defendants contend that Miall's claims have been mooted by his appointment to the Commission in October 2023.

### a. Effect of the 2023 Ordinance

"When a case or controversy ceases to exist—either due to a change in the facts or the law—the litigation is moot, and the court's subject matter jurisdiction ceases to exist also." Porter v. Clarke, 852 F.3d 358, 363 (4th Cir. 2017). Nonetheless, the Supreme Court has stated that it is a "'well settled' rule that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 662 (1993) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982) and explaining that while a new ordinance "may disadvantage [the non-minority plaintiff] to a lesser degree than the old one" the new ordinance still accorded "preferential treatment to black- and female-owned contractors" and therefore disadvantaged the plaintiff "in the same fundamental way" such that the plaintiff's claims were not mooted by the new ordinance). At the same time, "when subsequent amendments to a challenged law are so extensive as to remedy the problems initially alleged by the plaintiff,

8

there is a diminished threat of continuing unconstitutional conduct, and the case is rendered moot." H.B. Rowe Co., Inc. v. Tippett, 5:03–CV–278–BO, 2007 WL 7766702, at *9 (E.D.N.C. Mar. 30, 2007) (citing City of Jacksonville, 508 U.S. at 662 n.3).

Here, the 2022 Ordinance directed that "[m]embership on the Commission shall include, but not be limited to" members of certain minority groups. Doc. 5 at ¶ 22(b).

The 2023 Ordinance, in contrast, provides that "equal access and opportunity to serve" will be provided to "all historically disadvantaged groups" and sets forth specific examples. Doc. 18-1 at 3–4. Plaintiffs allege that in presenting the language of the 2023 Ordinance, the City's attorney "explained that the [Commission] was the only board that 'calls out a requirement to guarantee access to those individuals.'" Doc. 5 at ¶ 37.

The 2023 Ordinance does not impose quotas, nor does it require the appointment of individuals who are members of a minority groups. However, even if the language of the 2023 Ordinance, standing alone, is constitutionally permissible, the Amended Complaint, when read in the light most favorable to Plaintiffs, alleges that the 2023 Ordinance as it is applied and administered by the City continues to place non-minority applicants on unequal footing as

compared to their minority counterparts.[2] Based on these allegations, Plaintiffs have alleged adequately that the 2023 Ordinance continues to disadvantage Plaintiffs "in the same fundamental way" such that passage of the 2023 Ordinance did not moot Plaintiffs' claims.

### b. Miall's Appointment to the Commission

When a plaintiff receives "the 'precise relief' they sought," "no decision [a court] could issue would have any 'practical effect' in the real world," and the plaintiff's claims are moot. <u>Eden, LLC v. Justice</u>, 36 F.4th 166, 170 (4th Cir. 2022).

Here, Plaintiffs (including Miall) seek an award of nominal damages. Therefore, Miall's appointment to the Commission has not entirely mooted his claims. <u>See</u> <u>Chapin Furniture Outlet Inc. v. Town of Chapin</u>, 252 F. App'x 566, 572 (4th Cir. 2007) (An assertion of nominal damages claim alone may preserve a live controversy, if "'a plaintiff establishes the violation of [a constitutional

_____

[2] The Supreme Court has found that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group…, [t]he 'injury in fact'…is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." <u>City of Jacksonville</u>, 508 U.S. at 666. Here, Plaintiffs' allegations that they competed for Commission appointments on unequal footing would support, at this stage of this matter, an injury-in-fact. <u>See</u> <u>id</u>. (finding that an association of general contractors made up of members that generally did not qualify as "minority business enterprises" had standing to challenge a city ordinance that reserved a portion of city contracts "for the exclusive competition" of certified black- and female- owned businesses); <u>Regents of Univ. of California v. Bakke</u>, 438 U.S. 265 (1978) (plaintiff, who was white, had standing to challenge a medical school admissions policy that set aside 10% of the available spots for minorities).

right] but cannot prove actual injury.'") (quoting <u>Farrar v. Hobby</u>, 506 U.S. 103, 112 (1992)) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 254 (1978)); <u>see also</u> <u>Glob. Impact Ministries v. Mecklenburg Cnty</u>., No. 3:20-CV-00232-GCM, 2022 WL 610183, at *5 (W.D.N.C. Mar. 1, 2022) ("Viewing the complaint in the light most favorable to the Plaintiffs, the Amended Complaint alleges that the Proclamation was either unconstitutional on its face, or constitutional on its face and unconstitutional as applied. In the event that the Court determines at the merits stage that the Proclamation was facially unconstitutional, nominal damages could potentially be available to redress the constitutional violation."); <u>Ussery v. Freeman</u>, No. 5:23-CV-219-BO-RJ, 2024 WL 3073299, at *5 (E.D.N.C. June 20, 2024) (considering a 12(b)(1) motion and noting that an as-applied challenge claim seeking nominal damages was not mooted by the expiration of an ordinance and end of the defendant city's policy) (collecting cases).

### 3. Ripeness

Defendants also assert that, because Plaintiffs' applications will remain pending for one year after submission, Plaintiffs' claims (with the exception of Miall's claims) are not ripe.

The Amended Complaint alleges that Plaintiffs' applications were submitted in March and April of 2023, Doc. 5 at ¶¶ 29–33, so in Defendants' view, Plaintiffs' applications were valid until the Spring of 2024. Since the

record does not indicate that Plaintiffs' applications have been renewed, the undersigned will presume the applications have expired. Consequently, Plaintiffs' claims should not be dismissed as unripe.

## B. Rule 12(b)(6)

### 1. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from

conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

### 2. Equal Protection

In order "[t]o make out an equal protection claim, [Plaintiffs] must 'plead sufficient facts to demonstrate plausibly that [they] w[ere] treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.'" SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Va., 91 F.4th 715, 720 (4th Cir. 2024) (quoting Equity In Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011)); see also James v. City of Monroe, No. 3:22-cv-00178-RJC-DSC, 2022 WL 3268744, at *10 (W.D.N.C. Aug. 10, 2022) ( "a plaintiff must show (1) that she has been treated differently from others with whom she is similarly situated, and (2) the unequal treatment was the result of intentional or purposeful discrimination").

In this case, Defendants argue that Plaintiffs have "simply not alleged facts demonstrating that they were 'treated differently from others who were similarly situated' following their applications for appointment…." Doc. 18-2 at 9.

The undersigned has closely considered Defendants' position, especially in light of Plaintiffs' allegations that Ms. Blanchard and Ms. Sacco were appointed to the Commission, and the materials attached to the Amended Complaint that reflect that both Ms. Blanchard and Ms. Sacco are white. Doc.

5 at ¶ 34; Doc. 5-1 at 3. Similarly, as discussed above, Miall, who is white, was appointed to the Commission. Finally, Plaintiffs have not alleged that other individuals who *did* identify as members of a minority group (or an "historically disadvantaged group") applied and were offered positions on the Commission under the 2022 Ordinance.

However, Plaintiffs do allege that the City's "appointment preference for minority applicants to the [Commission] treats Plaintiffs differently than similarly situated applicants on the basis of race." Doc. 5 at ¶ 44; see also id. at ¶ 49. Specifically, Plaintiffs allege that "the City Council will not endeavor to appoint white residents unless they also satisfy a separate category, such as being a member of the LGBTQ+ community, a youth member, disabled, living in public housing, or recognized as a community leader. On the other hand, the City Council will automatically prefer minority applicants without requiring those applicants to satisfy a separate category." Id. at ¶ 23; see also id. at ¶ 20 ("The City Council appointed the HRCA's first members on May 22, 2018, largely adhering to the quotas set forth in the ordinance. The City Council strived to adhere to these quotas in its subsequent appointments to vacant positions on the HRCA, including confirming with the Boards & Commissions Committee that newly appointed members satisfied the requisite numbers.")

Under these circumstances, whether Plaintiffs have alleged adequately that they were treated differently from similarly situated applicants based on

14

race presents a close call. See James v. City of Monroe, No. 3:22-cv-00178-RJC-DSC, 2022 WL 3268744, at *10 (W.D.N.C. Aug. 10, 2022) ("[P]ersons who are in all relevant respects alike are 'similarly situated.' 'Although different courts describe this requirement in different ways, however the test is written, the basic point is the same: the evidence must show an extremely high degree of similarity.'") (internal citations omitted); Hodge v. Coll. of S. Maryland, 121 F. Supp. 3d 486, 501 (D. Md. 2015) ("Other than Plaintiffs' conclusory assertion that Mr. Hodge did not receive an equal education to that of his white peers, the complaint does not contain facts to support that Mr. Hodge's similarly situated peers were treated more favorably in the grading process or in the grading appeal process. Plaintiffs' conclusory assertions are insufficient to withstand a motion to dismiss ….").

However, considering Plaintiffs' allegation that white applicants must "also satisfy a separate category" to be on equal footing to "prefer[red] minority applicants," the undersigned will recommend that this claim be allowed to proceed.

### 3. 42 U.S.C. § 1981

42 U.S.C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"To bring a claim under § 1981, a plaintiff must demonstrate (1) that he is a member of a racial minority, (2) that defendants had the intent to discriminate against him on the basis of his race, and (3) that the defendants' discrimination concerned one of the statute's enumerated activities." Pena v. Porter, 316 F. App'x 303, 316 (4th Cir. 2009) (citing Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000)).

Here, Plaintiffs have alleged that they are *not* members of a racial minority, Doc. 5 at ¶¶ 6–10, and therefore have failed to state a claim for violation of Section 1981 as a matter of law. See e.g., Braun v. Braun, No. 3:22-cv-00357-RJC-DCK, 2023 WL 2582616, at *3 (W.D.N.C. Mar. 20, 2023) ("Plaintiff fails to allege she is a member of a racial minority or that any defendants discriminated against her because of her race. Thus, all Plaintiff's claims under [Section 1981] fail as a matter of law.").

## V.     Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss (Doc. 18) be **GRANTED IN PART** and **DENIED IN PART** and as follows:

(1) That Plaintiffs' claim for violation of 42 U.S.C. § 1981 be **DISMISSED** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and,

(2) That Plaintiffs' Equal Protection claim be allowed to proceed.

Signed: August 26, 2024

W. Carleton Metcalf
United States Magistrate Judge

17

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).