# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| JOHN P. MIALL, JR., ROBYN HITE, DAVID SHAW, WILLA GRANT, and DAVID EVANS,<br><br>  Plaintiffs,<br>v.<br><br>CITY OF ASHEVILLE, DEBRA CAMPBELL, in her official capacity as City Manager of the City of Asheville, and ESTHER MANHEIMER, in her official capacity as Mayor of the City of Asheville,<br><br>  Defendants. | Civil Action No. 1:23-cv-00259-MR-WCM<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES** |

Plaintiffs John P. Miall, Jr., Robyn Hite, David Shaw, Willa Grant, and David Evans,[1] through counsel, submit this Memorandum in Support of Their Motion for Attorneys' Fees.

## INTRODUCTION

Asheville residents have prevailed in their effort to eliminate the City of Asheville's racial classifications and preferences in appointing residents to the Human Relations Commission of Asheville ("HRCA" or "Commission"). They therefore move the Court, pursuant to 42 U.S.C. 1988(b), for an award of attorneys fees for their successful litigation in this matter.

The Court entered the Parties' consent decree on September 2, 2025, which provides that the City will amend the HRCA ordinance by removing sections containing racial classifications and will administer the ordinance without regard to race. Doc. 53. As a result, the City will no longer classify and advantage applicants to the HRCA basis of race. The Asheville residents sought this outcome through their lawsuit. Doc. 47.

---

[1] Plaintiffs are collectively referred to herein as "Plaintiffs" or "The Asheville residents."

As a prevailing party who successfully vindicated the right to equal treatment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, the Asheville residents respectfully request that this Court award all attorney fees reasonably incurred to obtain this favorable result. This motion is submitted on behalf of the residents' attorneys who successfully litigated this case, thus creating an indisputable entitlement to fees under 42 U.S.C. § 1983.

The amount of fees requested is reasonable: Asheville residents' fee claim is thoroughly documented and reflects substantial exercise of billing judgment; counsel performed efficiently and effectively; the hourly rates claimed reflect the range of rates charged by attorneys of similar skill and expertise in this jurisdiction; and the residents succeeded in their action, resulting in the cessation of the City's unconstitutional racial preferences. These factors entitle the residents' attorneys, the Pacific Legal Foundation (PLF), to full compensation for their efforts in the amount of $70,590.75, plus $3,000 for reasonable time spent preparing this motion, for a total of $73,590. In addition, the residents' local counsel, Ruth Smith of The Elmore and Smith Law Firm, P.C., is also entitled to compensation for her efforts in the amount of $11,600. Therefore, the Asheville residents' attorneys seek a grand total of $85,190.75.

## FACTUAL AND PROCEDURAL BACKGROUND

Since the inception of the HRCA in 2018, Asheville city ordinance permitted the city council to classify and consider applicants based on race for appointment to the commission. Consequently, residents could not apply for an appointment to the HRCA and receive consideration from the City on equal footing.

The Asheville City Council formed the HRCA on April 10, 2018, by enacting section 2-185.23 et seq. of the city code of ordinances. Doc. 47, Second Amended Complaint ("2d Am.

Compl."), ¶ 18. Section 2-185.25(b)(2)(b) of the ordinance established a racial quota that required the City to appoint six African Americans and two "Latinx" individuals to the HRCA. *Id*. ¶ 19.

The City amended Section 2-185.25(b)(2)(b) on July 21, 2022, and eliminated the requirement that the City Council appoint discrete numbers of particular races to the HRCA. *Id*. ¶¶ 21−22. However, racial preferences remained, as the ordinance now stated, "Membership on the Commission shall include, but not be limited to, the following: Black or African Americans; Latino/a or Hispanic individuals; Native Americans and Indigenous People; Asian Americans . . . ." *Id*. ¶¶ 22−23.

Asheville residents Miall, Hite, Shaw, and Grant submitted applications for the HRCA in 2023. *Id*. ¶¶ 29−32. They did not receive an appointment preference because they were white. Their applications came before the City Council on June 13, 2023, and the City Council declined to appoint any of them. *Id*. ¶ 33. It appointed two other individuals to two of the HRCA's six vacant positions. *Id*. The City continued to advertise the four remaining vacancies. *Id*. ¶ 35.

The residents filed their complaint on September 5, 2023, challenging the HRCA's racially discriminatory appointment preferences. Doc. 1. The residents then filed an amended complaint on September 27, 2023. Doc. 5.

On October 10, 2023, the City again amended Section 2-185.25(b)(2)(b) of the HRCA ordinance, modifying it to read, "The Consideration of appointment of members shall provide equal access and opportunity to serve upon the Commission to all historically disadvantaged groups, including but not limited to the following . . . Black or African Americans; Latino/a or Hispanic individuals; Native Americans and Indigenous People; Asian Americans . . . ." 2d Am. Compl. ¶¶ 36–37. It also appointed Miall to the Commission.

The City moved to dismiss the Asheville residents' Amended Complaint on November 6, 2023, which the residents opposed. Docs. 18 and 19. The Court denied the City's motion to dismiss. Doc. 32.

On September 3, 2024, Asheville resident Evans submitted his application for appointment to the HRCA. *Id.* ¶ 39. Evans identified as white and did not receive a preference based on his race. *Id.* ¶ 10, 39.

The Parties proceeded with discovery and commenced mediation of this matter on July 21, 2025. Doc. 49. The Parties negotiated and entered a Consent Decree agreeing that:

1. Defendant shall amend the HRCA ordinance by eliminating section (b)(2)(b) of Section 2-185.25.

2. Defendant will administer Section 2-185.25 without regard to the race, ethnicity, color, or national origin of any applicant for appointment to the HRCA.

3. Defendants shall state on the HRCA website and any website informing about vacant positions on the HRCA that appointment to the HRCA is not restricted to individuals of any particular race, ethnicity, color, or national origin, nor do Defendants consider such traits in making appointments to the HRCA. Docs. 51 and 52.

The consent decree became an order of the Court on September 2, 2025. Doc. 53. The parties filed a joint stipulation to dismiss on September 9, 2025, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)[2].

---

[2] Plaintiffs may seek attorneys' fees following voluntary dismissal. *See DeMier v. Gondles*, 676 F.2d 92, 93 (4th Cir. 1982) (District Court granted motion for attorneys' fees to plaintiffs after they voluntarily dismissed their claims).

## ARGUMENT

### I. THE ASHEVILLE RESIDENTS ARE PREVAILING PARTIES ENTITLED TO ATTORNEYS' FEES

"In any action or proceeding to enforce a provision of sections . . . 42 U.S.C. §§ 1981–1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The standard is typically formulated that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). Further, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id*. at 429 (citation omitted).

The Supreme Court held that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001). This circuit has confirmed that consent judgments can confer prevailing-party status on plaintiffs. *Cities4Life, Inc. v. City of Charlotte*, 52 F.4th 576, 582 (4th Cir. 2022). Even in the absence of an admission of liability by the defendant, a consent decree is nonetheless a "court ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant'" *Id*. (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792 (1989)). Consent decrees thus "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id*; *see also McAfee v. Boczar*, 738 F.3d 81, 87–88 (4th Cir. 2013) ("[A] party has prevailed if there has been a 'material alteration of the legal relationship of the parties,' and there is a 'judicial imprimatur on the change.'").

Here, the Asheville residents achieved the objective of their lawsuit of ridding the HRCA of its racial preferences. As a result of the consent decree, the City of Asheville completely eradicated racial classifications in the HRCA ordinance and committed to making appointments without regard to race. Docs. 51 and 52. The City will also inform residents that HRCA membership is not restricted by race. *Id.* This is precisely the outcome that the Asheville residents sought, as their complaint requested that the Court permanently enjoin the City from implementing racial preferences in HRCA appointments. Doc. 46 at 13.

The consent decree significantly changes the legal relationship between the Asheville residents and the City. Prior to the consent decree, the HRCA ordinance authorized the City to treat the Asheville residents unfavorably based on race, causing the residents to compete for an appointment on unequal footing. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit."). The consent decree eliminates the injury that the City inflicted on the Asheville residents, and the residents can now compete equally for a position on the HRCA regardless of their race.

The Asheville residents are clearly the prevailing parties since they obtained the goal of their lawsuit of equal treatment and no longer face a disadvantage from the City's treatment in seeking appointment to the HRCA.

## II. THE ASHEVILLE RESIDENTS' REQUEST FOR ATTORNEYS' FEES IS REASONABLE

Since the Asheville residents succeeded in eliminating the HRCA's racial classifications and preferences, they are entitled to all fees reasonably incurred in the course of litigation. *Hensley*, 461 U.S. at 429. A "reasonable" fee is a fee that is sufficient to induce a capable

6

Case 1:23-cv-00259-MR-WCM    Document 56    Filed 09/22/25    Page 6 of 18

attorney to undertake the representation of a meritorious civil rights case. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

The Fourth Circuit applies a three-step process to calculate a reasonable attorney's fee. First, the Court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009); *see also Hensley*, 461 U.S. at 433 ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). "[T]here is a 'strong' presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("We have established a strong presumption that the lodestar represents the 'reasonable' fee.'").

Second, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Hensley*, 461 U.S. at 433 (citation omitted). Courts in this circuit award fees for unsuccessful motions if the moving party was successful on the underlying claim and the motion advanced that claim in some permissible way. *Carpet Super Mart, Inc. v. Benchmark Int'l Co.*, No. 1:18CV398, 2020 WL 4505670, at *14 (M.D.N.C. Aug. 5, 2020).

Finally, "'[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Robinson*, 560 F.3d at 244 (citation omitted).

The fees that Asheville residents seek for the time and rates their counsel expended on their challenge are reasonable.

### A. The Hours Are Reasonable

First, the hours that the Asheville residents' counsel from Pacific Legal Foundation spent working on this matter are reasonable. Counsel litigated this case for two years. During that time, they exchanged several pleadings and motions and engaged in discovery that was necessary to support their claims and respond to the City's extensive efforts to uphold the HRCA ordinance. The fees that the Asheville residents' counsel accrued pertain to work they performed in support of these efforts, including, among other things: researching, preparing, and filing the complaints; conducting discovery; researching, drafting, and filing briefs regarding a preliminary injunction, class certification, the City's motion to dismiss, and the magistrate's recommendations for that motion; negotiating the consent decree; and monitoring City activity in connection with the HRCA.

Since the research that counsel conducted was reasonable, relevant to this matter, and done in good faith, it is compensable. *See Certain v. Potter*, 330 F. Supp. 2d 576, 583 (M.D.N.C. 2004). A full and detailed accounting of these hours is included in the spreadsheets attached to the attorney declarations accompanying this motion.

The Asheville residents' counsel are also entitled to recover reasonable attorneys' fees for this fee motion. "[A] fee award presumptively encompasses all aspects of the civil action." *I.N.S. v. Jean*, 96 U.S. 154, 161 (1990). That includes fees for the time spent pursuing entitlement and amount of fees. *Id.*; *see also Young v. Kenley*, 641 F.2d 192, 195 (4th Cir. 1981) (remand to the district court to award reasonable attorneys' fees for services expended to resolve the issue of attorneys' fees).

Meanwhile, the claimed fees exclude PLF's paralegal work, participation by junior attorneys in collaborative assignments, managing attorney reviews and discussions, and travel

time. They also exclude hours that counsel spent viewing HRCA and City Council meetings related to the residents' claims. The total amount of hours for which counsel seeks compensation are thus reasonably condensed.

Second, since the residents did not assert any unsuccessful claims, the Court should not subtract any of the recorded hours from the total recoverable amount. The motion for class certification and preliminary injunction are compensable even if the Court did not grant them because they advanced the residents' equal protection claims, which ultimately prevailed. *Carpet Super Mart*, 2020 WL 4505670, at *14.

Third, the Court should award residents' counsel the full hours they request because the hours relate to work completed on successful claims. None of the residents' claims failed, so the hours that their counsel is requesting are for work completed on claims that resolved favorably. Additionally, the total excludes a significant number of hours for other work completed on the successful claims, so the hours counsel is seeking compensation for are more than reasonable.

In their successful efforts, the Asheville residents' counsel expended a reasonable number of hours which should be compensated at the rates set forth below.

### B. The Hourly Rates Are Reasonable

The party seeking attorneys' fees has "the burden of establishing the reasonableness" of their rates and "is obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *McAfee*, 738 F.3d at 91. The Asheville residents have met their burden.

PLF utilizes a "team litigation" approach to ensure that their cases benefit from a mix of attorneys with varying skill levels whose practical experience and expertise combine to create the most efficient, knowledgeable, and skilled representation of their clients. Rather than seeking

9

to recover fees for every attorney, paralegal, and law clerk who contributes to the success of the Asheville residents, PLF seeks fees only for the core litigation team members, Andrew Quinio, Jessica Thompson, Laura D'Agostino, and their outside local counsel, Ruth Smith.

The fees that the residents seek for their counsel are based on reasonable rates. Those rates are as follows: Andrew Quinio—$375 per hour; Jessica Thompson—$325 per hour; Laura D'Agostino—$325 per hour; and Ruth Smith—$400 per hour. These rates are well within the prevailing market rates in this community for the type of work performed and the skill and experience of the attorneys. *See* Affidavit of Mark Melrose (Melrose Aff.) ¶¶ 2–5.

As shown in the Declarations, Andrew Quinio served as the residents' lead counsel on all stages of litigation in this case. Mr. Quinio is an attorney (equivalent to associate) with Pacific Legal Foundation. His work in this case included: preparing and filing the amended complaints, briefing the motion for temporary restraining order and preliminary injunction, briefing the motion for class certification, drafting the opposition to Defendants' motion to dismiss, drafting the response to the magistrate's recommendations on Defendants' motion to dismiss, drafting discovery requests, assisting co-counsel prepare for John Miall's deposition, and negotiating and drafting the consent decree. Mr. Quinio was also the primary point of contact for the residents and opposing counsel. *See* Declaration of Andrew R. Quinio (Quinio Decl.) ¶¶ 1, 5.

Mr. Quinio holds a Bachelor's degree from U.C. Berkeley (2008), and a J.D. from University of Southern California (2012). He was admitted to practice law in California in 2012 and subsequently in several federal district and circuit courts. Prior to joining PLF, he was an attorney in the Office of General Counsel for the U.S. Department of Veterans Affairs where he litigated employment discrimination and whistleblower cases before the Equal Employment Opportunity Commission and Merit Systems Protection Board. He has successfully litigated

numerous cases dealing with equality under the law, including *Cusano et al. v. Cook County et al.*, No. 1:22-cv-07196 (N.D. Ill. filed December 21, 2022), *Dalton v. Hao et al.*, No. 1:23-cv-11216 (D. Mass. filed May 31, 2023), *Nistler v. Walz et al.*, No. 0:24-cv-00186 (D. Minn. filed January 24, 2024), *Lynn v. Goff*, No. 1:24-cv-00211 (D. Or. filed February 1, 2024), and *Californians for Equal Rights Foundation v. City of San Diego et al.*, No. 3:24-cv-00484 (S.D. Cal. filed March 12, 2024). Mr. Quinio has practiced law for over 12.5 years. *Id.* ¶¶ 2–4.

Laura D'Agostino serves as the residents' co-counsel during the latter stages of litigation, including discovery and mediation. She is an attorney (equivalent to associate) for PLF. Ms. D'Agostino's work in this case included: attending mediation, negotiating resolution of this case, and reviewing drafts of correspondence, mediation statements, and the consent decree. *See* Declaration of Laura M. D'Agostino (D'Agostino Decl.) ¶¶ 1, 5.

Ms. D'Agostino holds a Bachelor's degree from George Mason University (2012), a Master's degree from Georgetown University (2016), and J.D. from George Mason University (2016). She was admitted to practice law in Virginia in 2017, in the District of Columbia in 2018, and subsequently in several federal district and circuit courts. Prior to joining PLF, Ms. D'Agostino was an employment law and general litigation associate attorney at private firms. She also clerked for the Honorable Tracy Calvin Hudson of the 31st Judicial District of Virginia. Ms. D'Agostino has successfully litigated several cases concerning equal protection with respect to discriminatory government boards, including *Law et al. v. Gast*, No. 4:22-cv-00176 (S.D. Iowa filed May 24, 2022), *Haile v. Hutchinson*, No. 4:23-cv-00005 (E.D. Ark. filed January 4, 2023), *Do No Harm v. Lee*, No. 3:23-cv-01175 (M.D. Tenn. filed November 8, 2023), and *Do No Harm v. Edwards*, No. 5:24-cv-00016 (W.D. La. filed January 4, 2024). She has practiced law for approximately 8 years. *Id.* ¶¶ 2–4.

Jessica Thompson served as the residents' co-counsel during the initial stages of litigation. She was an attorney (equivalent to associate) for PLF. Ms. Thompson's work in this case included: drafting the motion for class certification, reviewing and revising drafts of the Amended Complaint, reviewing drafts of the temporary restraining order and preliminary injunction, and reviewing and revising drafts of the opposition to Defendants' motion to dismiss the Amended Complaint. *See* Quinio Decl. ¶¶ 8–10

Ms. Thompson holds a Bachelor's degree from the University of North Carolina at Chapel Hill (2009), and a J.D. from the University of North Carolina School of Law (2014). She was admitted to practice law in North Carolina in 2014 and subsequently in several federal district courts. Prior to joining PLF, she worked as litigation counsel at the New Civil Liberties Alliance and the Cause of Action Institute. Ms. Thompson also clerked for the Honorable Mark D. Martin, Chief Justice of the North Carolina Supreme Court. She has practiced law for approximately 10 years. *Id*. ¶ 9–10. Given that Ms. Thompson's experience and years of practicing law are similar to Ms. D'Agostino's, the residents are seeking the recovery of Ms. Thompson's fees at the same rate as Ms. D'Agostino's of $325 per hour.

Ruth Smith served as the residents' local counsel at all stages of litigation. She is a managing partner at Elmore and Smith Law Firm, P.C. Ms. Smith's work in this case included: researching for and drafting the initial complaint, assisting Pacific Legal Foundation attorneys understand local court rules and practices, filing case initiation documents, sponsoring pro hac vice applications, and reviewing case filings, discovery, and correspondence. Declaration of Ruth C. Smith (Smith Decl.) ¶¶ 1–5.

Ms. Smith holds a Bachelor's degree from the University of North Carolina at Chapel Hill (1994) and a J.D. from University of North Carolina School of Law (1999). She was

12

admitted to practice law in North Carolina in 1999 and subsequently in the U.S. District Court for the Western District of North Carolina. Prior to working at Elmore and Smith, Ms. Smith was a solo practitioner. She has successfully litigated cases challenging government violations of equal protection and civil rights, including *WNC Citizens for Equal. v. City of Asheville*, No. 1:21-CV-00310 (W.D.N.C. filed Oct. 19, 2021) and *Allen v. Wray*, No. 0:22-cv-04536 (D.S.C. filed December 15, 2022). Ms. Smith has practiced law for 26 years. *Id.* ¶¶ 2–4.

The following table outlines the hours and rates for the lodestar amount of the reasonable fees incurred in this matter and the total fee amount.

| Attorney | Admitted | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Andrew R. Quinio | 2012 | 173.83 | $375 | $65,186.25 |
| Laura D'Agostino | 2017 | 5.22 | $325 | $1,696.50 |
| Jessica Thompson | 2014 | 20.64 | $325 | $6,708 |
| Ruth Smith | 1999 | 29.00 | $400 | $11,600 |
| | | | **Grand Total:** | **$85,190.75** |

C. **Awards in Similar Cases Reflect a Similar Range**

Similar civil rights cases demonstrate that the rates charged by the Asheville residents' counsel are within the range of the North Carolina community. In *Fisher-Borne v. Smith*, No. 1:12CV589, 2018 WL 3581705, at *1, 3–4 (M.D.N.C. July 25, 2018), the court granted attorneys' fees ranging from $200 to $400 per hour to plaintiffs who successfully brought a challenge pursuant to 42 U.S.C. § 1983. In *Eschert v. City of Charlotte*, No. 3:16-CV-295-FDW-DCK, 2017 WL 3840275, at *1, 3–5 (W.D.N.C. Sept. 1, 2017), the court awarded the plaintiff attorneys' fees under Section 1988 of $100 to $350 for work completed in a successful employment retaliation claim.

This Court has also granted attorneys' fees for similar civil rights challenges which demonstrate the reasonableness of the residents' attorneys' rates. *See Hyatt v. May*, No. 1:19-

CV-00250-MR-WCM, 2023 WL 2699990, at *1 (W.D.N.C. Mar. 29, 2023) (Attorneys' fees awarded at the rate of $300 per hour in challenge brought under Section 1983); and *Hebb v. City of Asheville, N. Carolina*, No. 1:22-CV-00222-MR-WCM, 2025 WL 256999, at *2 (W.D.N.C. Jan. 21, 2025) (Attorneys' fees awarded at a rate ranging from $350 to $425 per hour in a challenge to violations of free speech and due process by the City of Asheville).

### D. The Hours and Rates are Reasonable Under the *Johnson* Factors

In addition to the presumptive reasonableness of the lodestar figure, the requested hours and rates satisfy the twelve (12) factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) that this circuit considers. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir.1978). Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* Several of these factors weigh in favor of a determination that the hours and rates of the Asheville residents' counsel are reasonable.

Factors (1) through (3) and (9) weigh in favor of the residents because residents' counsel expended significant time and labor bringing the novel and consequential issues in this matter regarding equal protection. The lawsuit was brought in the wake of the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) which clarified and set forth the standard that government must satisfy for race-based

action. It thus required the time, labor, experience, and expertise of Mr. Quinio and his co-counsel to competently represent the residents' equal protection claims.

Additionally, as lead attorney, Mr. Quinio expended substantial time on this case, particularly in preparing the motion for temporary restraining order and preliminary injunction. Since the motion was time-sensitive, it precluded Mr. Quinio from substantively working on any other cases during the time he drafted it. Quinio Decl. ¶ 6. And given the amount of time it required for this case to resolve, there were additional cases that PLF attorneys could not pursue until this matter was complete. Factor (4) thus weighs in favor of the residents.

Mr. Quinio and PLF did not charge the residents an attorney fee in this case, choosing instead to seek fees only upon successful resolution of the case. *Id*. ¶ 7. The fees that residents' counsel are seeking are thus reasonable, and factor (6) weighs in their favor. *See Johnson*, 488 F.2d at 718.

Meanwhile, although there is no amount in controversy in this matter, there is great value to the public interest in upholding the residents' constitutional rights. *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011) ("[U]pholding constitutional rights is in the public interest."); *see also Bernstein v. Sims*, 643 F. Supp. 3d 578, 588 (E.D.N.C. 2022) ("The public interest always lies with the vindication of constitutional rights."); and *Patton v. Kimble*, No. 2:16-CV-10 (BAILEY), 2019 WL 13550915, at *6 (N.D.W. Va. June 17, 2019) ("[P]otential violations of constitutional rights should not have a price tag on them."). Factor (8) thus weighs in the residents' favor.

Factor (10) supports residents because they sought to vindicate their civil rights against unlawful racial discrimination by the government, which can be unpopular among the public and the legal community. "Civil rights attorneys face hardships in their communities because of their

desire to help the civil rights litigant." *Johnson*, 488 F.2d at 718 (citing *NAACP v. Button*, 371 U.S. 415 (1963)). Efforts to eliminate discrimination are often "not pleasantly received by the community or [civil rights attorneys'] contemporaries." *Johnson*, 488 F.2d at 718. The residents' efforts to challenge so-called reverse discrimination in particular can subject them to significant backlash.[3]

Finally, factor (12) weighs in the residents' favor because the amount their counsel seeks is comparable to fees recovered in similar cases. *Fisher-Borne* 2018 WL 3581705, at *11 ($102,766.50); *Eschert*, 2017 WL 3840275, at *5 ($561,166.25); *Hyatt*, 2023 WL 2699990, at *9 ($182,769.00); *Hebb*, 2025 WL 256999, at *7 ($113,572.50).

## CONCLUSION

For the foregoing reasons, and because Plaintiffs are prevailing parties entitled to recover reasonable and necessary attorneys' fees, this Court should grant the Motion and award Plaintiffs attorneys' fees in the amount of $85,190.75.

---

[3] *Edward Blum Has New Allies in His Fight Against Affirmative Action, The Economist* (Feb. 26, 2025), https://www.economist.com/united-states/2025/02/26/edward-blum-has-new-allies-in-his-fight-against-affirmative-action (last visited Sept. 22, 2025). (Activist challenging race-conscious government programs "has received a dozen death threats . . . along with umpteen allegations of racism, abuse often tinged with antisemitism.").

DATED: September 22, 2025.

    Respectfully submitted,

/s/ Andrew R. Quinio

| | |
|---|---|
| Ruth C. Smith | Andrew R. Quinio* |
| N.C. Bar No. 26754 | Cal. Bar. No. 288101 |
| The Elmore and Smith Law Firm, P.C. | Pacific Legal Foundation |
| 79 Woodfin Place, Suite 103 | 555 Capitol Mall, Suite 1290 |
| Asheville, NC 28801 | Sacramento, CA 95814 |
| Tel.: (828) 367-7998 | Tel.: (916) 419-7111 |
| Fax: (828) 367-7991 | Fax: (916) 419-7747 |
| ruth@mywncattorney.com | AQuinio@pacificlegal.org |

Laura M. D'Agostino*
Virginia Bar No. 91556
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Tel.: (202) 888-6881
Fax: (916) 419-7747
LDagostino@pacificlegal.org

*Pro Hac Vice*
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following:

Eric P. Edgerton
City of Asheville
7 Carraway Street
Woodfin, NC 28804
eedgerton@ashevillenc.gov

Kayla N. McDaniel
Patrick H. Flanagan
P.O. Box 30787
Charlotte, NC 28230
kmcdaniel@cshlaw.com
phf@cshlaw.com

*Counsel for Defendants*

                                          /s/ Andrew R. Quinio
                                          Andrew R. Quinio